We'll hear now from the parties in Rehman v. Lynch, or Rehman v. Lynch. May it please the court, my name is Kagendra Karthi Chettri, I'm here on behalf of the petitioner. Your Honor, this case involves an immigration application for legalization filed by the petitioners pursuant to the Life Act that was enacted on December 21st, 2000. The Life Act required that the individual applicants should be present in the United States on December 24th, 1988. Basically, the main requirement is the physical presence in the United States. In this case, Mr. Rehman, the petitioner had entered the United States Honor before January 1st, 1981, and resided through 1988. And he provided evidence that he was living here. There are a number of documents in the record, Your Honor. For example, that he has provided a bank letter that clearly says he was here when he opened the bank letter from the Ched Bank in 1982 to 2004. The agency did not credit the testimony or this evidence, so you have to tell us why there's error. Not only that, Your Honor, this bank letter has never been looked at by the agency below, and that evidence has not been considered. Not only that, Your Honor, that the evidence such as the subleases from 1981, like there are three or four subleases that the applicant has submitted, they were also not discussed in the record below, as well as, Your Honor, the employment letters from many employers, at least four employers here. I can count here, Your Honor, starting from 1981. Right. Excuse me. The bank letter, the AAO didn't consider it because it was written after its decision. The BIA didn't consider it because the AAO is the only appellate authority for Life Act applications. You have to tell us why those are wrong decisions. Your Honor, the bank letter was in the record, but that should have been considered. We think that I think it was somehow the government is arguing in that direction, but there is no record that he had not submitted that earlier. But our argument is besides that, Your Honor, we have other substantial evidence here that the subleases, the letter from the community, he has got employment letters. Actually, the record is clear that employers have provided the addresses, telephone numbers, and the job description, when he worked, and all of those records are there. I don't know why the government has not reviewed these documents. There is substantial, not only that, the test of the evidence here requirement is that preponderance of evidence, which has been a requirement, has been a requirement. Let's talk about for a minute the affidavits from the two friends who vouched for the date of entry. Yes. Mr. Javed and oh, they are both Javed. Amjad Javed and Khalid Javed. You are familiar with those affidavits? Yes, Your Honor. The agency said they didn't believe them, correct? Yes. And they didn't believe them because they were identically worded. Is that what the agency said? Yes. The agency said that they did not provide the contact information. Well, they said that, too, but they also doubted their credibility because of the identity of wording, which suggested to them that they were prepared by somebody else and these people just signed them. Now, the phrases they found were this. One man says, Mr. Raymond, quote, and he said Raymond or Reckman. How does he say it? I don't know. Either way? Yes, Raymond. Raymond. Okay. One says, Mr. Raymond is a close family friend since long time. And the other said, is a close family friend since long time. And then one goes on, as my knowledge, he is living in the USA since 1981. And the other says, as per my knowledge, he is living in the USA since 1981. And then one says, we very often visit each other. And the other says, we very often visit each other. And the agency said, these are form affidavits that do not represent truth. Why isn't that a reasonable conclusion from those affidavits? It is not reasonable because, Your Honor, if the agency had any issues regarding these have been asked to come in, but there is nothing. He doesn't have to go searching out to telephone people who submit affidavits that look false on their face. There's no requirement of that. Your Honor, these are immigrants, people who have been able to obtain these letters from somebody they know. They don't know how to write exactly all of these affidavits, but they have been only provided. No, on the contrary. Yeah. The suggestion is they knew precisely because they used identical language given to them. It's not that they didn't know. It's that they signed what was handed to them. That's the inference that the agency drew. That inference is, Your Honor, I think it was incorrect in the sense that they did not verify the information from this individual. You think they should have called them up? Yeah, they should have called them up. Yes, Your Honor. Anything else? Yes, Your Honor. And further that, Your Honor, as I was saying, that the government has shown there were some inconsistencies. One of the examples, Your Honor, has just pointed out that the situation that he was married, and then it was wrongly stated in the application, but I think he had provided a corrected application, a correction in the application later on. The government has not looked at it. And then also, you know, he was consistent when he went for the interview in 2003, Your Honor. In the interview, he did consistently testify. The government has nowhere here said that this gentleman was not here or was having any other issues with this. He had only issue was that whatever document he submitted were not properly considered. So I respectfully submit that there is an abuse of discretion here. I don't think there are any other issues in this case except that, Your Honor. If I am correct, government counsel will maybe highlight on that. Let me ask you one thing. Do you understand the issue for us is not whether we believe he was here in 1981. The issue is whether on this record the agency was entitled to conclude that he was not. That's correct. Do you understand that difference? Yes, correct. Agency was whether or not correctly applied the evidence and considered evidence, and whether or not the petitioner made the burden of proof here. Thank you, Your Honor. Thank you. Counsel. Good morning, Your Honors. May it please the Court, my name is John McAdams, and I represent the Attorney General, the appellee. This case is one where much opportunity was provided to the petitioner to submit a complete and thorough application, and the agency properly exercised its discretion. The agency gave Mr. Rahman opportunities to respond to the notice of intent to deny, and he failed to perfect his application. It also provided him in the notice information about the regulations that discussed information to complete the portions of the application, in that the regulations provided what type of information could be of Mr. Rahman's presence before the 1st of January, 1982, and then discussed how the affidavits were neither credible nor amenable to verification, and went on further to discuss the personal affidavits and, as the judge has pointed out, the similarities involving them, and then also went into detail about the employment letters, and the agency went so far as to comment that the S.S. Construction Employment Agency went to look to the New York State Division of Corporations and could not find contact information for that business. And then it also discussed the deficiencies and questions in his travel, and that birth certificates and marriage certificate was not provided. The agency, the appellate agency, the AAO, in its decision, showed that it considered the evidence of record, and even stated that it considered all the evidence, and it considered the arguments, and in a proper exercise of its discretion, it considered and provided an articulated and thorough decision. Thus, there was no abuse of discretion on the part of the agency. Can I ask you a jurisdiction? Your brief originally told us we lacked jurisdiction of the petition, right? Yes, Your Honor. But that brief, before you altered your position, then said in the middle of it, I don't have the jurisdiction to determine the merits. We have to look at jurisdiction. Yes, Your Honor. What did that mean? In the beginning, the brief said we don't have jurisdiction. In the end, it said we need to look at jurisdiction. Well, as many say, the court always has the jurisdiction to determine its jurisdiction. Right, but your brief said we have to look at jurisdiction to determine the merits. And the merits on the type of case where it was. The position taken initially was that this case was, if it had been charged back when Mr. Raymond entered, he would have been charged as an excludable alien and not a deportable alien. Right. And there was a distinction between excludable and deportable back before the IRERA Act, the Illegal Immigration Reform and Immigrant Responsibility Act. So if the court, in looking at the case of Mr. Raymond in the merits and found that he was an excludable, could question whether it had jurisdiction. So in reviewing for the argument, the position came clear that what the court in the Fourth Circuit in Urquiza was looking at was the judicial review scheme. And what we were looking at from our position was that the court looks to see if there is jurisdiction, it looks at the merits of the case, the facts, and then to determine was Mr. Raymond in deportation or not. It's pretty odd to tell a court, you don't have jurisdiction, but the first thing you should do is look at the merits. Well, in the court's review of anything, it always has to look at whether it has jurisdiction. That's jurisdiction to determine jurisdiction. We always have that. Yes, Your Honor. You invited us to look first to the merits. Right. Well, maybe what I should have said was the facts to determine whether the court had jurisdiction. In any event, you've changed, the government's changed its position, right? Yes, Your Honor. So we now have jurisdiction. Yes, Your Honor. So the fact, but we couldn't have reviewed it before. We needed a removal order. Correct. There needed to be a final order in this case. And on review of the removal order, we consider whether exclusion was proper. Yes. Is that it? And the application for change. Yes, Your Honor.  Thank you, Your Honor. I would like the court's attention to page number five of the government's brief, Your Honor, where the number three points that government has cited states that the employer's address and employment records were not, the addresses were not provided. I think that is coming from one of the decisions of the AOA, Your Honor, which is really wrong because if you look at the record I just earlier mentioned that all the employment letters have addresses, telephone numbers, and what kind of work he did and from what date to what date and the position involved in that. So quickly, Your Honor, I would also like to say that the intent to deny letter was issued and he did reply with that. He even provided as per the record that— Did the employment letters provide contact information for the employers? Yes. There is an employer's contact telephone numbers right below or on the top of the letter except one of them, all of them have it, Your Honor. And the argument that the government could not find this company listed in the New York State website is not in itself that this person did not do any work or this company did not exist because there was no other evidence that was provided to show that they did not, they didn't exist. So what I'm saying, Your Honor, at the end of this argument is that this petitioner has actually provided and meets the burden of proof. All these documents, I mean, even if we have issue about the affidavits, they are not correctly done. But in overall, totality of circumstances, evidence, and what he testified before, and the circumstances underlying his situation, he didn't have a social security number. He could not even get his things registered. So there were a lot of difficulties to collect information. This much evidence in similar circumstances reasonably is more than enough to prove the case, Your Honor. So I would like to request to grant the petitioner. Thank you so much. Thank you. I'm going to take the case under advisement. Thank you. Our last case for today is on submission, so we stand adjourned. Court stands adjourned.